The document below is hereby signed. Dated: April 9, 2012.



_____
**S. Martin Teel, Jr.**
**U.S. Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| BRYAN W. TALBOTT, | ) | Case No. 11-00450 |
| | ) | (Chapter 7) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| W. BICKFORD HUBER and W. | ) | |
| BICKFORD HUBER CO., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Adversary Proceeding No. |
| v. | ) | 11-10031 |
| | ) | |
| BRYAN W. TALBOTT, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendant. | ) | |

MEMORANDUM DECISION RE MOTION TO DISMISS

The issue before the court is whether the plaintiffs'
amended complaint should be dismissed for failure to state a
claim upon which relief can be granted.  The plaintiffs filed the
amended complaint following this court's order (Dkt. No. 30, Jan.
19, 2012) dismissing their initial complaint pursuant to Fed. R.
Civ. P. 12(b)(6).  The plaintiffs' amended complaint seeks a
determination by this court that a judgment obtained by them in
the District of Columbia Superior Court against the defendant,

Talbott, for $72,132.92 plus interest and costs is

nondischargeable.[1]  They also request that judgment be entered

against the defendant for an additional $673,043.55 and that such

debt be excepted from discharge.  The motion to dismiss will be

granted in part and denied in part.

A complaint survives a motion to dismiss if it contains

enough factual allegations, accepted as true, "to state a claim

to relief that is plausible on its face."  *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d

929 (2007).  "A claim has facial plausibility when the plaintiff

pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the

misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct.

1937, 1949, 173 L. Ed. 2d 868 (2009).  The plausibility standard

does not require probability, "but it asks for more than a sheer

possibility that a defendant has acted unlawfully."  *Id.*  In

addition to the facts alleged in the complaint, the court may

consider "any documents either attached to or incorporated in the

complaint and matters of which [the court] may take judicial

---

[1] I noted in my previous decision that the plaintiffs have
alleged that the $72,132.92 money judgment includes an award of
$13,500 in punitive damages, but the Superior Court's findings
mention no such award.  When the amounts awarded by the Superior
Court's findings are added together, however, they total
$58,632.92, which is $13,500 short of the money judgment.  The
$58,632.92 included $10,000 for fraud and that $10,000 appears to
be punitive damages because no other basis for damages was
presented at the hearing.

notice." *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997).

## Count I

In Count I, the plaintiffs allege that the District of Columbia Superior Court judgment for $72,132.92 plus costs and interest is nondischargeable pursuant to 11 U.S.C. § 523(a)(2)(A) because it represents a debt for money obtained by false pretenses, a false representation, or actual fraud.  A claim of fraud requires a showing that the defendant made a representation and that he knew at the time he made the representation that it was false, that he made the representation with the intent and purpose of deceiving the plaintiffs, that the plaintiffs justifiably relied on the representation, and that the plaintiffs sustained a loss or damage as the proximate consequence of the false representation. 4 *Collier on Bankruptcy* ¶ 523.08[e] (Bender 2011).  The plaintiffs must allege that the defendant obtained by fraud some money, property, services or credit.  In my previous decision in this case, I dismissed this claim because the plaintiffs did not identify what property was obtained by fraud.

Clearly, a claim for nondischargeability of a debt only arises if a debt to the plaintiff exists.  *Pearce v. Muncey (In re Muncey)*, 2009 WL 1651451, *8 (Bankr. E.D. Tenn. June 12, 2009) ("It is axiomatic that before a debt can be found nondischargeable, there must be a debt.")  However, the amended

complaint does not specify what property was obtained by

Talbott's alleged false representations that "Debtor and his

company had deposited good funds in Plaintiff's account when in

fact the funds were not good" and "Debtor and his company had

fully accounted to Plaintiffs when in fact they had not."  Am.

Compl. ¶ 39.  Therefore, the plaintiffs fail to allege that any

debt arose from these misrepresentations.

The amended complaint states that there was an "unexplained

withdrawal" of $2,775, but does not allege any facts to show that

the defendant's failure to explain the withdrawal was fraudulent

conduct.  Am. Compl. Exh. 5 at 20; ¶ 40.

The amended complaint still teems with conclusory statements

and its factual allegations are skimpy.  By combing through the

documents incorporated in the amended complaint and piecing

together the fragments of facts contained therein, the court

determines that the plaintiffs have established the following

factual allegations which do state a claim for relief under

§ 523(a)(2)(A).  The defendant and his company, Private

Properties, Inc. acted as property managers for plaintiffs'

property.  In three separate instances Private Properties, Inc.

received a check signed by a tenant, cashed it, but did not

record it in the income registered.  Am. Compl. Exh. 5 at 12-13,

18-19.  One of the defendant's duties was to collect rents and

security deposits from tenants and to disburse the proceeds to

the plaintiffs.  Am. Compl. ¶ 46.  However, the plaintiffs never

received the money from these checks, which totaled $3,950.  Am.

Compl. Exh. 5 at 12-13, 19.

Here the plaintiffs have "nudged" their claim that the

defendant obtained the $3,950 by fraud "across the line from

conceivable to plausible."  *Bell Atl. Corp. v. Twombly*, 550 U.S.

at 570.  The defendant represented in the income statement that

no check had been received when he knew that representation to be

false.  Moreover, the allegations that the defendant cashed the

checks but concealed their existence from the plaintiffs are

sufficient to allege that the defendant made the representations

with the intent and purpose of deceiving the plaintiffs.

Finally, the plaintiffs justifiably relied on the income

statement, and the plaintiffs sustained a loss of $3,950 as a

proximate result.[2]  Therefore, the plaintiffs have stated a claim

under § 523(a)(2)(A).

---

[2] As discussed in the court's previous decision in this
case, though the Superior Court awarded $10,000 "because it was
fraudulent conduct here, and there would be an entitlement of
punitive damages," the Superior Court's findings make no mention
of what conduct was found to be fraudulent.  Am. Compl. Exh. 5 at
26.  The mere labeling of conduct as fraudulent is not sufficient
to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 129 S. Ct. at
1949.  However, if the $10,000 award of punitive damages relates
solely to other nondischargeable claims, the punitive damages
would also be nondischargeable as an incident of the damages
recoverable for such nondischargeable claims.  *See Cohen v. de la
Cruz*, 523 U.S. 213 (1998).

Count II

In Count II the plaintiffs allege that the Superior Court judgment is nondischargeable under 11 U.S.C. § 523(a)(4) because it was obtained by defalcation or embezzlement.  To state a claim under § 523(a)(4), the amended complaint must set forth facts that allow the court to reasonably infer that  "(1) the defendant was obligated to the plaintiff in a fiduciary capacity; (2) the defendant committed fraud or defalcation while acting in his fiduciary capacity; and (3) the plaintiff's debt resulted from such fraud or defalcation." *Jacobs v. Mones (In re Mones)*, 169 B.R. 246, 255 (Bankr. D.D.C. 1994).  "Defalcation" means "a failure to produce funds entrusted to a fiduciary."  4 *Collier on Bankruptcy* ¶ 523.10[1][b].

The amended complaint sufficiently alleges that Talbott was obligated to the plaintiffs in a fiduciary capacity.  Private Properties, Inc. entered into a property management contract with the plaintiff Huber Company in 2001.  Am. Compl. ¶ 9.  Under District of Columbia law defining trusts, a property management contract may constitute an express trust which in turn creates a fiduciary relationship between the property management company and the property owners for purposes of § 523(a)(4).  *In re Aiken*, 2008 WL 2856697, at *11 (Bankr. D.D.C. July 21, 2008).  The amended complaint states that the defendant was the alter ego for Private Properties, Inc., and therefore, sufficiently alleges

that Talbott was a fiduciary with respect to the plaintiffs.  Am.
Compl. ¶ 7.

The plaintiffs entrusted Talbott and his companies with all
of the income from the Property, which included rents and
security deposits, and it was the defendant's duty to disburse
the proceeds to the plaintiffs.  Am. Compl. ¶¶ 46, 47.  The
amended complaint represents that the defendant failed to pay
$3,950 in rent to the plaintiffs.  Likewise, the amended
complaint alleges that tenants gave checks for security deposits
to Private Properties, Inc. and that Private Properties, Inc.
cashed these checks, but that the defendant never returned the
security deposits to the tenants.  Am. Compl. Exh. 5 at 19.  The
plaintiffs allege that Talbott "withheld security and other
deposits that Debtor should have returned to Plaintiffs."  ¶ 41.
The total amount of these missing security deposits was $4,752.

In his opposition, the defendant argues that the plaintiffs
have not alleged that the funds they claim were not turned over
were in fact obligated to be turned over.  The defendant contends
that the management contract allowed the defendant to direct
funds to various sources.  However, the complaint states that the
plaintiffs were entitled to these rental proceeds and security
deposits and that it was the defendant's duty to turn over these
proceeds.  Accepting these allegations as true, I determine that
the plaintiffs have sufficiently alleged that the $3,950 in

missing rents and $4,752 in missing security deposits resulted

from defalcation while the defendant was acting in a fiduciary

capacity.

Count II also attempts to plead embezzlement, which is

another basis for an exception to discharge under § 523(a)(4).

The complaint states: "Debtor committed embezzlement by

appropriating Plaintiffs' rents and security deposits entrusted

to them for a use other than for which it was entrusted and the

circumstances indicate fraud." Am. Compl. ¶ 56.  The plaintiffs

have failed to allege the use for which these funds were

entrusted to the defendant and what use the defendant made of

them.  As a consequence, the amended complaint fails to allege

that a debt from the debtor is nondischargeable because it

results from embezzlement.

## Count III

The amended complaint states that the Superior Court's

judgment should be excepted from discharge "because it involves

willful and malicious injury under 11 U.S.C. § 523(a)(6)."  In

support, the amended complaint asserts that the judgment included

"attorney's fees, fraudulent conduct and punitive damages" and

that the "Plaintiffs [sic] acts were deliberate, willful and

malicious."  Am. Compl. ¶¶ 60-62.

Section 523(a)(6) excepts from discharge a debt "for willful

and malicious injury by the debtor to another entity or to the

property of another entity."  A debtor's actions "are willful and
malicious within the meaning of § 523(a)(6) if they either have a
purpose of producing injury or have a substantial certainty of
producing injury."  *Conte v. Gautam (In re Conte)*, 33 F.3d 303,
307 (3d Cir. 1994).  The injury may be physical damage or
destruction, or "an injury to intangible personal or property
rights."  4 *Collier on Bankruptcy* ¶ 523.12[4].

The amended complaint does not indicate what conduct was
willful and malicious.  It also does not specify the resulting
injury to the plaintiffs.  The mere fact that the judgment
includes an award of attorney's fees and punitive damages does
not mean that the defendant's acts were willful and malicious.
Therefore, Count III does not state a claim upon which relief may
be granted.

## Count IV

The Superior Court judgment included an award of attorney's
fees in the plaintiffs' favor as a sanction for the defendant's
noncompliance with the litigation.  The plaintiffs contend that
the attorney's fees are nondischargeable as a fine, penalty, or
forfeiture under § 523(a)(7).  In addition, the plaintiffs have
recovered $16,747.84 from the Real Estate Commission's fund and
state that they may have to pay back the Real Estate Commission's
fund for any amount they recover from the defendant.  They argue
that "[t]o the extent that Plaintiffs must repay these funds to

the District of Columbia upon recovery from Debtor, these funds

are not dischargeable under 11 U.S.C. § 523(a)(7)." Am. Compl.

¶ 65.  The plaintiffs also contend that the defendant is required

to make restitution into a forfeiture fund as part of a criminal

plea and that "[t]o the extent that Plaintiffs receives [sic]

funds from the Debtor under this adversary proceeding and must

repay these funds to the United States Government, these funds

are not dischargeable under 11 U.S.C. § 523(a)(7)." Am. Compl.

¶ 66.

The amended complaint still does not allege any debt of the

defendant for a fine, penalty, or forfeiture payable to and for

the benefit of a governmental unit, as is required for a debt to

be nondischargeable under § 523(a)(7).  The plaintiffs may be

required to reimburse the Real Estate Commission's fund if they

recover funds from the defendant, but this does not amount to a

debt of the defendant for a fine, penalty, or forfeiture payable

to a governmental unit.  The plaintiffs seek to have a debt that

is owed to them - not to a governmental unit - deemed

nondischargeable.  The same is true with respect to the

plaintiffs' argument regarding the forfeiture fund.  The

plaintiffs are not a governmental unit and § 523(a)(7) is not

applicable. *See Affordable Bail Bonds, Inc. v. Sandoval (In re*

*Sandoval)*, 541 F.3d 997, 1001 (10th Cir. 2008) (looking to

whether there was any obligation flowing from the debtor to a

governmental unit in determining whether the complaint stated a claim for relief under § 523(a)(7)).  Therefore, Count IV fails to state a claim for relief under § 523(a)(7).

With respect to the award of attorney's fees, this court explained in its January 19, 2012 decision that the exception to discharge in § 523(a)(2)(A) "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen v. de la Cruz*, 523 U.S. 213, 223 (1998).  In *Cohen*, the Court explained that "debt for money, property, services" obtained by false pretenses, a false representation, or actual fraud is not limited to the value of the property the debtor obtained by fraud.  *Id.* at 219-220.  Attorney's fees awarded incident to the recovery of a judgment for a debt that is nondischargeable fall within the "any liability" language of the holding in *Cohen*.  *Hogan v. George (In re George)*, 2012 WL 360157, *3 (Bankr. E.D. Ky. Feb. 1, 2012).  To the extent the attorney's fees were awarded with respect to the recovery of a judgment for a debt that is nondischargeable, the complaint sufficiently states a claim that the attorney's fees are also nondischargeable.

### Count V

The amended complaint alleges: "As a further result of the embezzlement by Debtor and his companies, Plaintiff fell behind

on the mortgage payments for the Property."  Am. Compl. ¶ 68.

The mortgage bank is seeking $673,043.55 from the plaintiffs.

The plaintiffs have reached an agreement with the mortgage bank

and the foreclosure sale has been "temporarily abated."  The

plaintiffs request that the court award damages in the amount of

$673,043.55 in their favor and against the defendant and that the

court determine such debt to be nondischargeable.  Am. Compl.

¶¶ 69, 70.

The amended complaint does not state a claim for

embezzlement and therefore to the extent the plaintiffs allege

that the $673,043.55 amounts to damages arising as a result of

embezzlement, they have failed to state a claim for relief.  The

amended complaint goes on to state that "Plaintiffs . . . request

that such debt be determined to be non-dischargeable under 11

U.S.C. § 523(a)(2)(A), 11 U.S.C. § 523(a)(4), and 11 U.S.C.

§ 523(a)(6)."  There are no factual allegations supporting Count

V which state a claim for relief under these statutory

provisions.  The complaint does not allege any specific conduct

by the debtor which caused the loss of $673,043.55.  With no

factual allegations supporting the claim that the $673,043.55 is

nondischargeable, Count V must be dismissed.

In addition, the defendant's motion to dismiss argues that

the plaintiffs did not assert this claim for damages in the

Superior Court action and that they are barred by res judicata

from raising the claim in this court.

"Res judicata may be raised in a Rule 12(b)(6) motion to
dismiss for failure to state a claim when the defense appears on
the face of the complaint and any materials of which the court
may take judicial notice."  *Sheppard v. District of Columbia*, 791
F.Supp.2d 1, 5 n.3 (D.D.C. 2011).  A federal court must give the
same preclusive effect to a District of Columbia Superior Court's
judgment as the District of Columbia courts would give to the
judgment.  *See* 28 U.S.C. § 1738; *Kremer v. Chem. Constr. Corp.*,
456 U.S. 461, 466, 102 S. Ct. 1883, 72 L. Ed.2d 262 (1982).
District of Columbia law applies a three-part test to determine
if a claim is barred by claim preclusion: "(1) whether the claim
was adjudicated finally in the first action; (2) whether the
present claim is the same as the claim which was raised or which
might have been raised in the prior proceeding; and (3) whether
the party against whom the plea is asserted was a party or in
privity with a party in the prior case."  *Patton v. Klein*, 746
A.2d 866, 870 (D.C. 1999).

The facts supporting Count V are so sparse that the court is
unable to determine whether the plaintiffs' claim for damages is
one which "might have been raised in the prior proceeding."  The
complaint and attached documents do not make clear when this
claim arose.  Therefore, the court will not address the issue of
claim preclusion at this juncture.

13

Conclusion

For these reasons, the motion to dismiss is granted in part and denied in part.  Accordingly, Count III (§ 523(a)(6)), Count IV (§ 523(a)(7)), and Count V are dismissed.


[Signed and dated above.]

Copies to: All counsel of record; Office of United States Trustee.