**The document below is hereby signed.**

**Dated: December 19, 2012.**



_____
**S. Martin Teel, Jr.
U.S. Bankruptcy Judge**

```
              UNITED STATES BANKRUPTCY COURT
               FOR THE DISTRICT OF COLUMBIA

In re                           )
                                )
BRYAN W. TALBOTT,               )      Case No. 11-00450
                                )      (Chapter 7)
                  Debtor.       )
_____  )
                                )
WILLIAM BICKFORD HUBER and W.   )
BICKFORD HUBER COMPANY,         )
                                )
                  Plaintiffs,   )
                                )      Adversary Proceeding No.
            v.                  )      11-10031
                                )
BRYAN W. TALBOTT,               )      Not for publication in
                                )      West's Bankruptcy Reporter
                  Defendant.    )
```

MEMORANDUM DECISION AND ORDER RE MOTION FOR DEFAULT JUDGMENT

Before the court is the plaintiffs' application for default judgment. In this adversary proceeding, the plaintiffs seek to have the court declare a judgment against the defendant for $72,132.92 plus interest and costs to be nondischargeable. For the reasons that follow, the court will grant the motion for default judgment.

I

The court has the power, under Rule 55(b)(2) of the Federal Rules of Civil Procedure (incorporated in Federal Rule of Bankruptcy Procedure 7055), to enter a default judgment against the defendant for the amount claimed and costs.  *United States v. Proceeds of Drug Trafficking Transferred To Certain Foreign Bank Accounts*, 757 F. Supp. 2d 24, 26-27 (D.D.C. 2010).  Courts strongly prefer to resolve disputes on their merits and, consequently, they do not favor default judgments.  *Jackson v. Beech*, 636 F.2d 831, 835 (D.C. Cir. 1980).

"A default judgment establishes the defaulting party's liability for every well-plead[ed] allegation in the complaint." *PT (Persero) Merpati Nusantara Airlines v. Thirdstone Aircraft Leasing Grp., Inc.*, 246 F.R.D. 17, 18 (D.D.C. 2007).  However, because a default judgment does not establish liability for the amount of damages claimed by the plaintiffs, "unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded."  *Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001).  *See also Directv, Inc. v. Agee*, 405 F. Supp. 2d 6, 11 (D.D.C. 2005); *Commodity Futures Trading Comm'n v. GIGFX, LLC*, 844 F. Supp. 2d 58, 64 (D.D.C. 2012).  To ascertain the amount of damages, the court may rely on affidavits, documentary evidence or hold a hearing.

*Int'l Painters & Allied Trades Indus. Pension Fund v. Executive Painting, Inc.*, 719 F. Supp. 2d 45, 50 (D.D.C. 2010).

Here, however, the Superior Court already awarded damages, and this court cannot alter that award.  As will be seen, the difficulty for this court is in ascertaining those amounts awarded by the Superior Court that relate to claims that are nondischargeable and those amounts that do not.

II

The defendant, Talbott, filed a motion to dismiss the adversary proceeding on December 1, 2011.  The court granted this motion and the plaintiffs filed an amended complaint on February 10, 2012.  Talbott filed a motion to dismiss the amended complaint on February 22, 2012, which the court granted in part by dismissing Counts III, IV, and V of the plaintiffs' amended complaint.  *See* Dkt. No. 44 (entered Apr. 10, 2012). The defendant's answer to the two remaining counts in the amended complaint was due by June 14, 2012.  At the plaintiffs' request, the clerk of the court entered a default against the defendant on July 12, 2012.  The result of the entry of default is that Talbott is deemed to have admitted all of the

well-pleaded allegations in the amended complaint.[1]  *Adkins*, 180 F. Supp. 2d at 17.

The plaintiffs properly served the defendant with written notice of the motion for default judgment.  *See* Fed. R. Bankr. P. 7055(b)(2); LBR 7055-1(c).  Since filing his motion to dismiss in February 2012, the defendant has not filed an answer or taken any other action that indicates he intends to defend this adversary proceeding.  "[T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to

---

[1] Additionally, the plaintiffs assert that their request for admissions should be deemed admitted because the defendant failed to respond.  The court agrees.  *See* Fed. R. Bankr. P. 7036 (incorporating Fed. R. Civ. P. 36).  However, the court will not deem the defendant to have admitted legal conclusions. *See Disability Rights Council v. Wash. Metro. Area*, 234 F.R.D. 1, 3 (D.D.C. 2006) ("It is [] true, however, that one party cannot demand that the other party admit the truth of a legal conclusion."); *see also Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").  Moreover, if the amended complaint fails to plead facts establishing that a claim is nondischargeable, no claim has been stated upon which relief can be granted, and requests for admission do not serve to amend the complaint further. If, on the other hand, a complaint's well-pleaded facts establish that a claim *is* nondischargeable, then requests for admission may be pertinent to the issue of damages.  Here, however, the Superior Court had already fixed the amount of damages.  In any event, the request for admissions here was largely cast in terms of asking the defendant to admit legal conclusions, and they are of no assistance.

his rights." *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 691 (D.C. Cir. 1970).  Because this adversary proceeding has been halted by the defendant's unresponsiveness and "there is a complete absence of any request to set aside the default or suggestion by the defendant that [he] has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Fanning v. Permanent Solution Indus., Inc.*, 257 F.R.D. 4, 7 (D.D.C. 2009) (internal quotation marks omitted).  Therefore, the court will enter default judgment against the defendant with respect to those claims of nondischargeability based on well-pleaded facts.

### III

Though the defendant is deemed to have admitted every well-pleaded allegation in the amended complaint, the defendant's default does not establish liability on claims that are legally insufficient.  *Saint-Jean v. Dist. of Columbia Pub. Sch. Div. of Transp.*, 815 F. Supp. 2d 1, 4 (D.D.C. 2011); *Jackson v. Correctional Corp. of Am.*, 564 F. Supp. 2d 22, 27 (D.D.C. 2008).

The plaintiffs request a default judgment under Counts I and II of the amended complaint for each item of damages alleged in the amended complaint and awarded by the Superior Court for the District of Columbia, for a total of $72,132.92.  The plaintiffs attached to their amended complaint the transcript of

5

the ex parte proof hearing in the Superior Court of the District of Columbia.  *See* Exhibit 5.  At that hearing, Judge Richter awarded the plaintiffs judgment in the amount of $72,132.92, pursuant to an oral decision that broke down the damages as follows:

(a)   $3,950 for the missing rents;

(b)   $4,752 for missing security deposits;

(c)   $2,775 for the unexplained withdrawal;

(d)   $500 for the maintenance deposit;

(e)   $4,770.84 in unearned management fees;

(f)   $1,500 in expert witness fees;

(g)   $10,000 in punitive damages;

(h)   $30,385.08 for attorney's fees.

Two aspects of the judgment merit comment before addressing what claims were nondischargeable.

First, the amount awarded totals $58,632.92, which is $13,500 less than the amount of the money judgment entered by the Superior Court.  Nothing in the record explains that discrepancy.  The plaintiffs contend that the Superior Court awarded $10,000 for fraudulent conduct and an additional $13,500 in punitive damages.  However, there is nothing in the record to support the plaintiffs' contention.  The $13,500 appears, instead, to be attributable to a mathematical error in totaling the items of damage.  Accordingly, the additional $13,500

awarded has not been shown to relate to a claim of a nondischargeable character, and that $13,500 will be nondischargeable only if the Superior Court amends its ruling in a way that treats the $13,500 as additional damages (either compensatory or punitive) for a claim falling within one of the categories that this decision treats as nondischargeable.

Second, the judgment was in favor of both plaintiffs.  This court will treat both the corporate and individual plaintiffs as holding any claim held to be nondischargeable.

The court previously determined that only Counts I and II of the amended complaint allege facts that state a claim upon which relief can be granted, and a more detailed discussion of the elements of each claim for relief can be found in that decision.  *See Memorandum Decision Re Motion to Dismiss* (Dkt. No. 43, entered Apr. 10, 2012).  The well-pleaded allegations establish that Private Properties, Inc., entered into a property management contract with the plaintiff Huber Company in 2001. The complaint alleges that Talbott was the President and control person of Private Properties, Inc., and alleges sufficient facts (Talbott's exercise of control over the corporation for the purpose of defrauding entities for which the corporation acted as a property manager) to support the allegation that Talbott operated Private Properties, Inc. as his alter ego. Accordingly, Talbott was obligated to the plaintiffs in a

7

fiduciary capacity.  The plaintiffs entrusted Talbott and his companies with all of the income from the plaintiffs' rental property (the "Property"), and it was Talbott's duty to disburse the proceeds to the plaintiffs.  It is fair, on the facts alleged, to impute to Talbott the breaches of fiduciary duty by Private Properties, Inc. as his alter ego.  It is unnecessary to rely on decisions holding officers to have breached a fiduciary duty whenever they participate in any breach of fiduciary duty by their corporation, regardless of the level of culpability. *See Capitol Indem. Corp. v. Interstate Agency, Inc. (In re Interstate Agency, Inc.)*, 760 F.2d 121, 125 (6th Cir. 1985) (finding that the corporation's president should be imputed with knowledge and participation in the corporation's breach of fiduciary duty because the president had "full knowledge and responsibility for the handling of [the corporation's] trust undertakings.").

A.  Missing Rents

Count I of the amended complaint alleges that Talbott failed to disburse $3,950 in rent payments to the plaintiffs.  Talbott represented in the income statement that the checks had not been received when he knew that representation was false, and he made that representation with the intent and purpose of deceiving the plaintiffs.  Moreover, the plaintiffs justifiably relied on the income statement.  Therefore, Count I states a

8

claim under 11 U.S.C. § 523(a)(2)(A), alleging that the rent payments that the defendant failed to disburse to the plaintiffs is a debt for money obtained by false pretenses, a false representation, or actual fraud, and the debt for $3,950 is nondischargeable.

### B.  Missing Security Deposits

Count II sets forth that the defendant accepted $4,752 in security deposits from tenants, cashed the checks, never returned the security deposits to the tenants, and deliberately withheld these security deposits from the plaintiffs.  Count II sufficiently alleges that this debt resulted from defalcation by Talbott while he was acting in a fiduciary capacity, and therefore the debt for $4,752 is nondischargeable under 11 U.S.C. § 523(a)(4).

### C.  Unexplained Withdrawal

The facts establish a claim that the $2,775 in missing income is a nondischargeable debt.  The facts set forth that there was an "unexplained and improper withdrawal from Plaintiffs' management account" of $2,775.  The defendant, in his fiduciary capacity, was entrusted with the income from the Property, and had a duty to account for such income.

Defalcation includes "the failure to properly account for such funds."  *Commonwealth Land Title Co. v. Blaszak (In re Blaszak)*, 397 F.3d 386, 390 (6th Cir. 2005) (quoting *In re*

*Interstate Agency*, 760 F.2d at 125) (internal quotations omitted).  The facts adequately assert that there is no explanation for the missing income of $2,775 in March 2008.  The failure to explain what happened to the $2,775 amounts to a failure properly to account that constitutes a defalcation.  The facts alleged do not amount to an innocent mistake by Talbott that might, under the view taken by some courts, result in a finding of no defalcation.  *See Schwager v. Fallas (In re Schwager)*, 121 F.3d 177, 185 (5th Cir. 1997) ("While defalcation may not require actual intent, it does require some level of mental culpability."); *see also Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66-69 (2d Cir. 2007) (summarizing the differing standards for measuring defalcation applied by the Circuit Courts of Appeal).

D.    Maintenance Deposit

There are no allegations of fact that support a claim that the $500 maintenance deposit is a nondischargeable debt.  There are no factual allegations as to what conduct by the defendant brought about this debt.

E.    Management Fees

The allegations in the complaint do not show that Private Properties, Inc.'s taking the management fees of $4,770.84 was itself a breach of fiduciary duty.  Nevertheless, the management fees were held to be not owed by reason of the breaches of

10

fiduciary duty that *did* occur. The disallowance of the management fees was a damage remedy for the breaches of fiduciary duty, and the damage award for recovery of those management fees is nondischargeable pursuant to *Cohen v. de la Cruz*, 523 U.S. 213, 118 S. Ct. 1212, 140 L. Ed. 2d 341 (1998). In *Cohen*, the Supreme Court held that the exception to discharge in § 523(a)(2)(A) "encompasses any liability arising from money, property, etc., that is fraudulently obtained, including treble damages, attorney's fees, and other relief that may exceed the value obtained by the debtor." *Cohen*, 523 U.S. at 223, 118 S. Ct. at 1219. That holding logically extends to all liability arising from any debt that is nondischargeable. *See Fry v. Dinan (In re Dinan)*, 448 B.R. 775, 785 (B.A.P. 9th Cir. 2011) ("The Supreme Court did not limit its holding in *Cohen* to cases only under section 523(a)(2)(A)."); *see also Adamo v. Scheller (In re Scheller)*, 265 B.R. 39, 55 (Bankr. S.D.N.Y. 2011); *St. Paul Acad. & Summit Sch. v. Kiernat (In re Kiernat)*, 338 B.R. 809, 814-815 (D. Minn. 2006). Accordingly, the damage claim for recovery of management fees, a remedy for breach of fiduciary duty, is nondischargeable.

### F. Attorney's Fees, Expert Witness Fees, and Punitive Damages

The attorney's fees and expert witness fees are similarly nondischargeable pursuant to *Cohen v. de la Cruz*. The

attorney's fees and expert witness fees are part of the debt to the plaintiffs which arose from Talbott's fraud and defalcation. The Superior Court awarded those fees as a sanction for Talbott's failure to comply with his obligations in the litigation.  Because the bulk of the items awarded by the Superior Court are nondischargeable, and because there is nothing to suggest that a lesser amount of fees would have been incurred had the plaintiffs pursued only the claims that are nondischargeable, the court will treat the fees as nondischargeable.

Additionally, the $10,000 in punitive damages, which relates to the nondischargeable claims, is nondischargeable as a liability associated with the nondischargeable claims. *Foreign Affairs Serv., Inc. v. Pittman (In re Pittman)*, 442 B.R. 485, 492 (Bankr. W.D. Va. 2010) ("An award of punitive damages that arises from Defendants' nondischargeable fraud is likewise nondischargeable.").  The plaintiffs' claim that the Superior Court awarded $13,500 for punitive damages finds no support in the documents filed by the plaintiffs.  Therefore, that $13,500 will be nondischargeable only if the Superior Court amends its ruling to decree that the $13,500 is a remedy relating to one or more of the categories of claims this court has ruled are nondischargeable.

G. Preclusive Effect of Superior Court Judgment

The plaintiffs also urge this court to give preclusive effect to the Superior Court monetary judgment. Claim preclusion (also known as res judicata) does not apply in a nondischargeability action such as this one with respect to issues of nondischargeability. *See Brown v. Felsen,* 442 U.S. 127, 133-39, 99 S. Ct. 2205, 2210-13, 60 L. Ed. 2d 767 (1979); *In re Adamson*, 2010 WL 2635631, at *2 (Bankr. D.D.C. June 28, 2010). A state court judgment *will* have res judicata effect with respect to the amount of damages awarded for any claim found to have been nondischargeable.

Moreover, although issue preclusion (or collateral estoppel) may apply to a state court judgment, the Superior Court's findings of fact and the plaintiffs' complaint in the Superior Court case are too vague to warrant such preclusive effect with respect to those claims this court has ruled are dischargeable. Those documents do not make clear whether those claims relate to conduct on the defendant's part that was a breach of fiduciary duty or fraudulent (or what property was obtained by fraud). Therefore, it is not clear that the requirements of issue preclusion are met in this case. *See Washington Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1283 (D.C. 1990) ("Issue preclusion . . . renders conclusive in the same or a subsequent action determination of an issue of fact or law

13

when (1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum.").

## IV

For all of these reasons, the plaintiffs shall have a judgment by default against the defendant declaring that $58,132.92 of the $72,132.92 judgment is nondischargeable under 11 U.S.C. § 523(a).  A judgment follows.

[Signed and dated above.]

Copies to: Recipients of e-notification of orders.

14

R:\Common\Tee1SM\RMC\Decisions\Talbott (11-10031)\Motion for Default Judgment\Mem Decsn re Mtn for Default Judgment v4.docx